Frank F. FIX, et al., Respondents,

v.

Wilhelmina (Billie) T. FIX,
et al., Appellants.

No. 75025.

Supreme Court of Missouri,
En Banc.

Feb. 23, 1993.

---

G. Edwin Proctor, Jr., Kansas City, for appellants.

Michael Paul Harris, St. Joseph, for respondents.

COVINGTON, Judge.

Wilhelmina (Billie) Fix appeals from the trial court's judgment imposing a constructive trust on money held in a joint savings account and a joint checking account in the names of Billie and her deceased sister, Catherine Liggett. The court found that Billie enjoyed a confidential relationship

with Catherine with the understanding that Billie would divide the money equally among herself and her brothers, Frank, Nicholas, and John, after Catherine's death. The Missouri Court of Appeals, Western District, reversed the trial court. This Court granted transfer of the case to examine the issue of admissibility of certain evidence in view of the 1985 amendment to § 491.010, RSMo 1986, which abolished the disqualification of interested witnesses in civil actions where one party is dead or incompetent and the adverse party testifies with respect to the contract, transaction, or cause of action. *Id.* That issue need not be addressed because, even if the evidence at issue is admitted, there is insufficient evidence to allow imposition of a constructive trust. Reversed and remanded.

Catherine died testate in May of 1986 in St. Joseph. Catherine executed her will in July of 1985. Billie, a resident of Florida, traveled to St. Joseph for Catherine's funeral. She and her brothers made the funeral arrangements. After the funeral, Billie and Frank went to the American National Bank in St. Joseph to examine the contents of Catherine's safe deposit box, of which Billie was a joint owner. The box contained Catherine's last will and testament,[1] along with two $5,000 certificates of deposit (CD's) in the name of Frank and Catherine; three $5,000 CD's in the name of Catherine and John; two $5,000 CD's in the name of Catherine and Nicholas; and four CD's in the total amount of $40,000 in the names of Catherine and Billie. The box also contained a savings account book and a checking account book, both in the names of Catherine and Billie, as per Catherine's designation on the accounts in 1964. The total amount of money in the accounts at the time of Catherine's death was $132,181.03, contributed solely by Catherine. From these accounts, Billie gave her brother Frank $20,000 to pay the decedent's funeral expenses, bills, personal income taxes, and certain specific monetary bequests to nephews set forth in the decedent's last will and testament. After

Frank paid the expenses and bequests, there remained $6,150.79. In addition to the personal property in the safe deposit box, Catherine designated Billie as a joint tenant with right of survivorship on the deed to her real estate. Catherine also designated Billie as a beneficiary on a $1700 life insurance policy. Only the savings and checking accounts in the joint names of Catherine and Billie are at issue.

Frank and Nicholas filed suit against Billie alleging that Catherine had told them that the joint savings accounts were to be divided equally among all of the surviving siblings; they alleged that clause eight in Catherine's will set out her intent in this regard. They alleged that Billie was aware of Catherine's intent and wrongfully converted the monies to her own use. The brothers sought judgment against Billie in the amount of "twenty-five percent each" of the balance of the account. In the alternative, the brothers asked the court to establish a constructive trust over the funds and distribute the funds equally among the siblings. Billie filed a counterclaim seeking return of the $6,150.79 balance of the $20,000 she gave Frank to pay the expenses.

At trial, the court admitted over Billie's objection testimony of Frank Fix, his wife, Mary, and their daughter, Mary, with respect to the decedent's alleged statements regarding Catherine's expectation of distribution of funds in the savings and checking accounts to the brothers, as well as to Billie. Billie denied the brothers' contentions. Billie testified that Catherine and she had placed the other's names not only on bank accounts but also on real estate deeds so that the other would be taken care of.

After the conclusion of the trial, the court entered an interlocutory order. The court ruled that the issue of constructive fraud was tried by agreement and treated as if raised in the pleadings, pursuant to *Rule 55.33(b)*. The court also found that a fiduciary relationship existed between

---

1. The will was admitted to probate on April 9, 1987. The record does not reflect whether letters testamentary were granted. Frank Fix was named personal representative in the will.

Catherine and Billie, Billie having promised to divide the funds in the joint accounts equally with the brothers upon Catherine's death. The court found that Billie breached the promise and was thereby unjustly enriched. The court found that Billie's actions constituted constructive fraud and imposed a constructive trust upon the disputed funds, including the $6,150.79 held by Frank. The court later entered judgment against Billie in the amount of the principal with statutory and bank interest.

Although this Court granted transfer to decide the effect of the 1985 amendment to § 491.010 in the present case with respect to Billie's claim that the alleged statements of the decedent were inadmissible through the testimony of Frank and Mary Fix, it is unnecessary, thus inappropriate, to resolve that question. As Billie alleges in her first point relied on, the evidence is insufficient to allow imposition of a constructive trust.

■ Billie alleges that the trial court erroneously imposed a constructive trust because the evidence did not meet the level of proof necessary for imposing a constructive trust. To establish a constructive trust, an extraordinary degree of proof is required. The evidence must be unquestionable in character. The evidence must be so clear, cogent, and convincing as to exclude every reasonable doubt in the mind of the trial court. *Suhre v. Busch*, 343 Mo. 679, 123 S.W.2d 8, 19 (1938). Review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ The analysis commences with emphasis upon the fact that it is undisputed that Billie and Catherine were joint tenants with right of survivorship on the accounts, as designated by Catherine in 1964 at the inception of the accounts. Ownership of the accounts therefore vests in Billie as a survivor, absent evidence of fraud, undue influence, mental incapacity, or mistake.

*In re Estate of LaGarce*, 487 S.W.2d 493, 500–01 (Mo. banc 1972); § 362.470, RSMo 1986.[2] There is no suggestion in the present case of Billie's having undue influence over Catherine, nor is there suggestion of mistake or mental incapacity. The issue is whether there is constructive fraud.

■ To establish constructive fraud, it is necessary only to prove the acts of fraud. *See Barrie v. United Ry. Co.*, 138 Mo.App. 557, 119 S.W. 1020, 1050 (1909). A constructive trust is a method by which a court exercises its equitable powers to "remedy a situation where a party has been wrongfully deprived of some right, title, benefit or interest in property as a result of fraud or in violation of confidence or faith reposed in another." *Schultz v. Schultz*, 637 S.W.2d 1, 4 (Mo. banc 1982); *see also Suhre v. Busch*, 123 S.W.2d at 15. Either actual or constructive fraud is sufficient to support imposition of a constructive trust. *Swon v. Huddleston*, 282 S.W.2d 18, 25 (Mo.1955). The object of the constructive trust is to restore to the rightful owner the property wrongfully withheld by the defendant. *March v. Gerstenschlager*, 436 S.W.2d 6, 8 (Mo.1969).

■ Proof of constructive fraud depends necessarily upon the actual circumstances of each case. *Swon v. Huddleston*, 282 S.W.2d at 26. Courts have equated constructive fraud with the breach or violation of a fiduciary, or confidential, relationship. *Id.* at 25. A confidential, or fiduciary, relationship exists in the context of the law of constructive trusts when a special confidence is reposed in one party and there is resulting domination of or influence on the other party. *See e.g. Matlock v. Matlock*, 815 S.W.2d 110, 115 (Mo. App.1991). A confidential, or fiduciary, relationship is not proven merely by a showing that the persons have ties of blood or family. *Misskelly v. Rogers*, 721 S.W.2d

---

2. *LaGarce* interpreted § 369.150, RSMo 1969, the statute governing deposits in savings and loan associations. Section 362.470, RSMo 1959, effective in 1964 when Catherine designated Billie as a joint tenant on her accounts, similarly governed joint accounts in banks. The law that pertains to § 369.150 also applies to § 362.470. *Matter of Estate of Parker*, 536 S.W.2d 25, 28

(Mo. banc 1976). In 1977 the legislature amended § 362.470 to incorporate the *LaGarce* holding by stating that the "making of [a joint account] ... in the absence of fraud or undue influence, shall be conclusive evidence" as to the intent of the decedent concerning the rights of the survivor to receive the money. § 362.470, RSMo 1986.

170, 172 (Mo.App.1986). Family and blood ties are factors to be considered in determining whether such a relationship exists. *Harlan v. Bishoff,* 649 S.W.2d 230, 233 (Mo.App.1983). Under Missouri law, the primary question is whether one family member has dominion over the other family member in regard to the transaction involved. *See Misskelly,* 721 S.W.2d at 172. There is no claim in this case that Billie exerted dominion or influence over Catherine, nor is there any evidence to support such a claim. A confidential, or fiduciary, relationship did not exist between Catherine and Billie.

A bench tried judgment that reaches a correct result, however, will not be set aside even if the trial court gives a wrong or insufficient reason for its judgment. *Edgar v. Fitzpatrick,* 377 S.W.2d 314, 318 (Mo. banc 1964). A finding of a fiduciary, or confidential, relationship is not always a prerequisite to a finding of constructive fraud for the purpose of imposing a constructive trust. There are numerous other circumstances in which Missouri courts have imposed a constructive trust. Closest to the present case are the cases that impose a constructive trust over property bequeathed or devised by will when a testator makes disposition of property in reliance on the beneficiary's promise, express or implicit, to convey the property to a third person, and the beneficiary breaches the agreement.

In *Soehngen v. Jantzen,* 186 S.W. 1109 (Mo.App.1916), the court imposed a constructive trust on property of a husband who admitted that he had promised his wife that he would sell land she bequeathed to him in her will and give $500 of the proceeds to wife's son. After wife's death, husband refused to sell the land, claiming that he made no commitment as to when he would sell the land. The court of appeals affirmed the trial court's imposition of a trust to prevent "a fraud which might otherwise be entailed; for no doubt

had [the husband] declined to accede to the request of his wife she would have otherwise made provisions for [her son]." *Id.* at 1110.

In *Strype v. Lewis,* 352 Mo. 1004, 180 S.W.2d 688 (1944), a husband alleged that his wife had agreed with the husband's father that she would hold in trust for husband the property she received under the father's will while husband recovered from an automobile accident. Husband alleged wife agreed to convey the property to husband after his recovery. The father died. Wife received two-fifths of the estate under the will, which mentioned nothing of a trust to hold the property for husband. The wife left the husband and refused to convey the property she received under the will. The husband sought the imposition of a trust upon the property received by his wife from his father's will. *Id.* 180 S.W.2d at 689.[3] Citing Restatement of Restitution § 186, this Court held that when a testator devises or bequeaths property to a person in reliance upon the person's agreement to hold the property in trust for or convey it to a third person, the devisee or legatee holds the property upon a constructive trust for the third person. *Id.* at 691.

The *Strype* court agreed with the general rule articulated in *Ferguson v. Robinson,* 258 Mo. 113, 167 S.W. 447 (1914), that equity will not enforce an oral promise of a donee by decreeing a constructive trust where there is nothing more than a mere violation of that agreement, but limited the rule to intervivos conveyances. *Strype,* 180 S.W.2d at 691. In testamentary circumstances, however, a constructive trust will be imposed when the named devisee either expressly promises or by silence implies that he will perform according to the intention of the testator. *Id.* Imposing a constructive trust under these circumstances did not violate the Statute of Wills since "for the same end, namely pre-

---

**3.** The plaintiff in the action was the husband's first wife who also sought a trust upon the property received by the husband's second wife. She alleged that the devise in the will was the result of a conspiracy between the father, the husband, and his second wife to prevent the property from passing to the husband, thus defrauding her as a judgment creditor for maintenance. *Id.*

vention of fraud, it engrafts the trust on the devise, by admitting evidence which the statute would in terms exclude, in order to prevent a party from applying property to a purpose foreign to that for which he undertook to hold it." *Id.* at 692. If the devisee had stated that he would not carry out the intentions of the testator, the testator would not have disposed of his property in favor of the devisee. *Id.*[4]

■ Analogous are the circumstances of Catherine's placing Billie's name on the joint accounts in this case. This Court in *LaGarce* recognized the sometimes testamentary nature of joint accounts. *La-Garce*, 487 S.W.2d at 501. Joint accounts are often "employed by persons with small estates who believe that it is possible thus to effectuate a testamentary disposition without the expense of will drafting or the delay of probate." Note, *Disposition of Bank Accounts: The Poor Man's Will*, 53 Colum.L.Rev. 103 (1953). Here, the evidence is undisputed that Catherine intended the joint accounts to serve as testamentary dispositions. The dispute arises only as to the obligation, if any, of Billie to share the accounts with her brothers after Catherine's death. Put otherwise, the question is whether there is clear, cogent, and convincing proof that Billie engaged in acts of fraud.

Examining the evidence in the light most favorable to the verdict, this Court finds the evidence insufficient to support the trial court's finding of constructive fraud. Essential to the establishment of a constructive trust in this case is proof of Catherine's having made disposition of her property in reliance on an agreement by Billie, express or implied, to divide the money with her brothers and Billie's subsequent breach of the agreement. *Strype*, 180 S.W.2d at 691. It is in this respect that the proof falls short, even assuming, without deciding, the admissibility of the alleged statements of the decedent as attributed to her by the Fix family.

Plaintiff Frank Fix testified that Catherine told him that she placed Billie's name on the joint accounts to avoid probate. Frank testified that Catherine stated that she trusted Billie and believed that Billie would divide the money in accordance with the will. Frank testified at a deposition that on one occasion, and at trial that on three or four occasions before her death, Catherine told him that she wanted the money disbursed according to the will and that she trusted Billie to "do the right thing." Frank also testified that Billie withdrew $20,000 from the joint accounts so that Frank, as the personal representative of the estate, could pay the debts and the specific bequests directed by Catherine's will.

Mary Fix, Frank's wife, testified that Catherine told her that she placed Billie's name on the accounts to avoid probate. According to Mary, Catherine refused to place the name of any of the brothers upon the accounts because she did not want Billie to think that she did not trust her. According to Mary, Catherine told Mary that she trusted Billie to divide the accounts equally. When Mary encouraged Catherine to place the brothers' names on the accounts or to remove Billie's name from the accounts, Catherine replied that she could trust Billie to divide it with her brothers. Mary testified that Catherine said Billie knew that was what Catherine wanted done. Both Mary Fix and her daughter, Mary Hudson, testified that after the funeral, during Billie's stay in St. Joseph, Billie said more than once, "Everyone thinks that I'm going to cheat them,

---

4. The Restatement of Restitution § 186 states that constructive trusts should be imposed where a devisee has breached his promise to a testator to prevent unjust enrichment. Restatement of Restitution § 186, comment b. Missouri courts have based this rule upon principles of both unjust enrichment and fraud. *Strype*, 180 S.W.2d at 691–92; *Soehngen*, 186 S.W. at 1110; *see Missouri Annotations to the* Restatement of Restitution, p. 195 (1944); *see also, Janssen v. Christian*, 57 S.W.2d 692, 695 (Mo.App.1933); *Mead v. Robertson*, 131 Mo.App. 185, 110 S.W. 1095, 1096–97 (1908). The fraud must necessarily be constructive since proof of actual fraudulent intent at the time of the promise inducing reliance by the testator is not required. *See Strype*, 180 S.W.2d at 691.

but they're going to get their money."[5]

Viewing the evidence in the light most favorable to the verdict, the evidence is not sufficiently clear, cogent and convincing so as to exclude every reasonable doubt, *Strype*, 180 S.W.2d at 693, that Billie accepted the designation of joint tenancy knowing of Catherine's intent. The strongest evidence to support the trial court's finding of a "promise" by Billie to Catherine is Catherine's alleged statement to Mary Fix that Billie knew what Catherine wanted done. If admitted and believed, however, the statement does not constitute clear, cogent, and convincing evidence of an agreement by Billie to divide the money with the brothers, or show that Catherine created or maintained the joint tenancy in reliance on Billie's promise to divide the money with the brothers. *Strype*, 180 S.W.2d at 691. Absent clear, cogent and convincing evidence of an agreement or understanding by Billie upon which Catherine relied so as to make disposition of her property by joint accounts with right of survivorship, there is insufficient proof to allow a finding of constructive fraud.

Without proof of fraud, the titling of the account in Billie's name as a joint tenant with right of survivorship is conclusive evidence of Catherine's intent that the accounts vest in Billie upon Catherine's death. *See LaGarce*, 487 S.W.2d at 501. The trial court erred in imposing a constructive trust. The judgment is reversed.

In view of the reversal of the judgment, there remains the question of Billie's counterclaim for the $6,150.79 balance of the $20,000 given to Frank from the accounts to pay Catherine's funeral expenses, bills, income taxes, and certain specific bequests set forth in Catherine's will. The trial court imposed a constructive trust over the balance along with the other funds, to be divided equally among the brothers and Billie. After the holding of this opinion, a

judgment is necessary on Billie's counterclaim, a matter best left to the trial court.

The judgment is reversed and the cause remanded for disposition of Billie's counterclaim.

All concur.

---

**5.** Billie testified that Catherine had not ever told her to divide the money in the joint accounts with the brothers, nor did Catherine tell her that she had placed the money in the joint accounts to avoid probate. According to Billie, both Catherine and Billie had placed each other's names on their joint accounts and on their respective real estate deeds in order that the survivor could be looked after. Billie denied that she ever made statements to either Mary Fix or Mary Hudson about giving her brothers the money.